NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RAHEEL MALIK, | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | No. 2:10-cv-06371 (WHW-CLW) |
| COOPER TIRE AND RUBBER CO.<br>and ABC CORPS. 1-10, | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

In this products liability case, Plaintiff Raheel Malik alleges that he sustained injuries in a car crash because of a tire defectively designed and/or manufactured by Defendant Cooper Tire and Rubber Company. Plaintiff moves for partial summary judgment to prevent Defendant from seeking to apportion liability to non-party Abdul Rahman, the vehicle's driver. Plaintiff also moves to bar evidence that Rahman used marijuana the night before the crash, arguing that it is irrelevant and prejudicial.

Decided without oral argument under Fed. R. Civ. P. 78, Plaintiff's motion is granted in part and denied in part. Defendant may seek to apportion liability to Abdul Rahman, and may introduce evidence to demonstrate that his driving errors contributed to the crash, but may not introduce evidence of Rahman's marijuana use.

NOT FOR PUBLICATION

# BACKGROUND

On August 25, 2009, Raheel Malik was a passenger in a 2000 Dodge Caravan heading east on I-64 in Illinois. Pl.'s SMF ¶¶ 2, 3. The driver and passengers testified that the vehicle was traveling at approximately 60 MPH, below the 65 MPH speed limit. *Id.* ¶¶ 9-10. It was sunny that day, traffic was light, the road was well lit, straight, level, and free of debris. *Id.* ¶¶ 11-12. At around 6:14pm, the vehicle's left rear tire experienced a tread and top belt detachment, making a loud "pop." *Id.* ¶¶ 2, 13-14; Def.'s SMF ¶ 5. The front seat passenger unbuckled his seatbelt to look back and see what had happened. Def.'s SMF ¶ 9. According to the accident report, the car veered to the right, moved off the roadway, overturned and rolled over several times before coming to a stop. Ex. D to Freeman Cert., ECF No. 82-3. Malik was ejected from the vehicle, suffering injuries that left him paraplegic. Pl.'s SMF ¶ 5. The tire was manufactured by Defendant. *Id.* ¶ 18. The driver, Abdul Rahman, had inspected the vehicle's tires the day before the accident, and they appeared to be in good condition. Dep. of Abdul Rahman, 54:6-15.

Rahman smoked marijuana the night before the accident. Def.'s SMF ¶ 4. A test of Rahman's urine three hours after the crash revealed a concentration of 507 ng/ml of Delta-9 Carboxy THC, a metabolite of the intoxicating chemical in marijuana. Expert Report of Gary Wimbish, PhD, Ex. O to Freeman Cert. 1, ECF No. 82-7 ("Wimbish Report").

Defendant plans to introduce the testimony of three experts to demonstrate that Rahman's marijuana use impaired his driving, and that had he not smoked marijuana, he would have been able to bring the vehicle to a safe stop. Defendant's accident reconstructionist, Todd Hoover, intends to testify that Abdul Rahman's driving contributed to the crash. *See* Dep. of Todd Hoover, Ex. E to Bradley Cert.; Expert Report of Todd Hoover, Ex. H to Bradley Cert. ("Hoover Report"). Mr. Hoover's theory is that after the tire failed, Rahman did not act quickly enough to

2

NOT FOR PUBLICATION

bring the vehicle to a stop, and that his "final right steer with sufficient rate and magnitude was far in excess of what [he] needed to maintain the travel lane." Hoover Dep. 154:21-155:6; *see also id.* 34, 153-56; Hoover Report 15-16.

Gary Wimbish, Ph.D., a forensic toxicologist, endorses studies showing that marijuana use can impair performance on complex tasks for up to twenty-four hours after use. Wimbish Report 3. Based on these studies, viewed alongside the results of Rahman's urine test, Dr. Wimbish concluded that Rahman was "significantly impaired" at the time of the accident. Dep. of Gary Wimbish 43:9-15, Ex. C to Bradley Cert., ECF No. 90-4. Dr. Wimbish found that "it is within all reasonable scientific probability that Mr. Rahman had lost the normal use of his mental and physical faculties at the time of the accident due to the recent and/or chronic use of Marijuana altering his judgment and contributing significantly to the accident." Wimbish Report 3.

Robert L. DuPont, M.D., a clinical psychiatrist, plans to offer the opinion that Rahman was significantly impaired at the time of the crash as a result of chronic and recent marijuana use, and that, when confronted with an unfamiliar problem, Rahman's inappropriate reactions were a major cause of the resulting crash. Expert Report of Robert L. DuPont, M.D., Ex. L to Bradley Cert. 6, ECF No. 90-13 ("DuPont Report"). In concluding that Rahman's impairment played a role in the accident, Dr. DuPont relied on Mr. Hoover's opinion that Rahman made errors when confronted with the tread separation. Pl.'s SMF ¶ 28. Dr. DuPont also reviewed Rahman's urine drug test results and Dr. Wimbish's analysis. DuPont Report 2-3.

Plaintiff seeks to bar Defendant from apportioning liability to Rahman because Defendant "did not include any claim for allocation in its affirmative defenses, has never asserted any claims against Rahman, and has never added him as a party to this litigation." Pl.'s

3

NOT FOR PUBLICATION

Br. 1. Plaintiff claims that Todd Hoover "is not rendering any opinion on the standard of care for Rahman's driving or reaching any conclusion that he was negligent in how he reacted to the tire separation," and therefore should be barred from testifying. Pl.'s Br. 9. Plaintiff further objects to testimony about Rahman's marijuana use as irrelevant and unduly prejudicial. Plaintiff criticizes Dr. DuPont as "unable to quantify [Rahman's] impairment or tie it to the happening of the accident," *id.* 12, and finds similar fault with Dr. Wimbish. *Id.* 12-14.[1]

## STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by

---

[1] Although this motion involves the admissibility of expert testimony, Plaintiff does not move under Fed. R. Evid. 702, offering challenges based on relevance and potential prejudice rather than on reliability. The Court makes no determination here as to the reliability of the proffered opinions.

NOT FOR PUBLICATION

"citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott,* 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.    Defendant May Seek to Apportion Responsibility to Abdul Rahman

"[T]he [New Jersey] Comparative Negligence Act and the Joint Tortfeasors Contribution Law promote the distribution of loss 'in proportion to the respective faults of the parties causing that loss.'" *Town of Kearny v. Brandt*, 214 N.J. 76, 102 (2013). Fault may be apportioned between strictly-liable and negligent parties. *See Blazovic v. Andrich,* 124 N.J. 90, 98-99 (1991) (citations omitted); *see also* N.J.S.A. § 2A:15-5.1 *et seq.* Under N.J.S.A. 2A:15-5.3(a), if a factfinder assesses a defendant's fault at sixty percent or more, the plaintiff may recover the full amount of the awarded damages from that defendant alone. *See Town of Kearny*, 214 N.J. at 97. If the factfinder apportions less than sixty percent of fault to that defendant, the plaintiff may recover from that defendant only the percentage of the damages assessed. *Id.*; N.J.S.A. 2A:15-5.3(c).

"Clearly, a non-settling defendant has the right to have a settling defendant's liability apportioned" by the factfinder. *Green v. Gen. Motors Corp.,* 310 N.J. Super. 507, 545 (App. Div. 1998), *cert. denied,* 156 N.J. 381 (1998) (citation omitted). "[A] credit is available in every case in which there are multiple defendants, whether or not a cross-claim for contribution has been filed." *Young v. Latta,* 123 N.J. 584, 586 (1991). In order to obtain a credit, the "non-settling

NOT FOR PUBLICATION

defendants must provide plaintiffs 'with fair and timely notice' of the intent to pursue a credit, and must prove liability." *Verni ex rel Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 209 (App. Div. 2006) (citing *Young*, 123 N.J. at 587; *Green*, 310 N.J. Super. at 546)). "[T]he court should not permit the non-settler to wait until the last minute before alerting the court and the plaintiff's lawyer that the settler's conduct will be at issue." *Young*, 123 N.J. at 598.

Plaintiff concedes having received notice of Defendant's intention to apportion liability to Rahman early in this litigation: "[i]n its supplemental answers to interrogatories, Cooper stated its intention to ask the jury to allocate fault to Rahman." Pl.'s Br. 1; Pl.'s SMF ¶ 19. The notice requirement of *Young* has been met here.

Plaintiff raises the additional objection that Rahman was never a party to this lawsuit, and therefore cannot be considered a settling defendant. Pl.'s Br. 15. Defendant counters that Plaintiff sued Rahman in the State of New York, and the two parties settled the claim. Def.'s SMF ¶ 11. Defendant points to the analogous case *Carter by Carter v. Univ. of Med. & Dentistry of New Jersey-Rutgers Med. Sch.*, 854 F. Supp. 310 (D.N.J. 1994), in which the court allowed a defendant in a medical malpractice action to apportion liability to a non-party who had settled in a different jurisdiction. The court found that "the present case is distinguishable from *Young* only in that plaintiffs' current litigation against the alleged tortfeasors has been divided between two jurisdictions. However, this is not a distinction that should prevent a jury from allocating the causative fault between the settler . . . and the nonsettling defendants." *Id.* at 315.[2]

---

[2] Plaintiff contends that *Carter* is outdated, but offers no authority to the contrary, citing only inapposite cases. *Bencivenga v. J.J.A.M.M., Inc.*, 258 N.J. Super. 399 (App. Div. 1992), *certif. denied*, 130 N.J. 598 (1992) involved a fictitious tortfeasor. In *Higgins v. Owens-Corning Fiberglas Corp.*, 282 N.J. Super. 600 (App. Div. 1995), the plaintiff misled the court by claiming to have settled with a non-party tortfeasor, but in truth never did. In *Straley v. United States*, 887 F. Supp. 728 (D.N.J. 1995), where an employee was injured by the garbage truck he was riding, a comparative negligence defense was not available under N.J.S.A. § 2A:58C-3 because the truck

NOT FOR PUBLICATION

Since *Carter*, other New Jersey courts have allowed a defendant to seek contribution from a non-party. "In other contexts, the Appellate Division has noted that a defendant is allowed to prove that a non-party was the sole proximate cause of the plaintiff's harm—the so-called 'empty chair' defense in which a defendant shifts blame to a joint tortfeasor who is not in the courtroom." *Brodsky v. Grinnell Haulers, Inc.*, 181 N.J. 102, 114 (2004) (collecting cases); *see also Fabian v. Minster Mach. Co., Inc.,* 258 N.J. Super. 261, 276-77 (App. Div. 1992), *certif. denied*, 130 N.J. 598, 617 (1992) (finding that a defendant manufacturer in a products liability case could "[shift] causal blame to another who is not legally liable in the suit," because such a defense "merely focuses the jury's attention upon the plaintiff's duty to prove that defendant's conduct or defective product was a proximate cause of the accident").

*Carter*'s reasoning is particularly persuasive in light of the jurisdictional barrier to Rahman's inclusion as a party to this lawsuit. Rahman is a domiciliary of New York, who allegedly committed tortious acts in Illinois. *See* Rahman Dep. 28:19-23. Even if Defendant had attempted to cross-claim against Rahman, the Court is aware of no basis for personal jurisdiction over Rahman. Because Defendant provided adequate notice under *Young*, the Court will follow *Carter*, and will not bar Defendant from asking a jury to apportion liability to Abdul Rahman.

## II.     Defendant May Introduce Todd Hoover's Testimony to Demonstrate Rahman's Negligence

To establish a prima facie claim of negligence, a plaintiff must show "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Polzo v. Cnty. of Essex,*

---

was "industrial machinery or other equipment used in the workplace." *Id.* at 742. In *Town of Kearny*, 67 A.3d at 601, a defendant was allowed to apportion fault to non-parties who were exempted from suit by the statute of repose. *Carter* is compatible with each of these cases.

NOT FOR PUBLICATION

196 N .J. 569, 584 (2008). An automobile driver has a duty to use reasonable care in the control, management and operation of his or her vehicle. *Goldstone v. Tuers,* 189 N.J. Super. 167, 169 (App. Div. 1983). Relevant evidence is that which tends to prove or disprove any fact that is of consequence to the outcome of the action. Fed. R. Evid. 401; N.J. R. Evid. 401.

Plaintiff argues that Todd Hoover's testimony about Rahman's driving is irrelevant because the expert is not offering an opinion on what a reasonable driver would have done under the circumstances. Pl.'s Br. 23. An expert need not offer such an opinion for the testimony to be relevant. "The requisite amount of care is commensurate to the risk involved in a particular driving situation. Normally, the jury determines the standard of care of a reasonable person in an automobile negligence case." *Rivera v. Allstate Ins. Co.*, No. L-5694-05, 2006 WL 2598261, at *2 (N.J. App. Div. 2006). This applies to highway emergencies as well:

> And while one acting in a sudden emergency may be left no time for thought, and so cannot weigh alternative courses of action, but must make a speedy decision, which will be based very largely on impulse or instinct, the conduct required is still that which is reasonable under the circumstances; his own judgment and impulse is still not the sole criterion, and he may still be negligent if his acts are unreasonable; and the question is one for the jury unless, perchance, it can elicit but one response from reasonable minds.

*Mijon v. Acquaire*, 51 N.J. Super. 426, 444 (App. Div. 1958) (cited in *Rybkin v. Twp. of N. Bergen*, No. A-3773-09T4, 2012 WL 1722575, at *7 (N.J. App. Div. 2012)).

The record here does not demonstrate that Rahman's driving would "elicit but one response" from a jury. Mr. Hoover ties Rahman's driving to the crash, agreeing that, "even though there was a tread separation, the accident itself, the actual physical accident itself, happened because Mr. Rahman did not properly react to the situation." Hoover Dep. 154:11-20. The accident reconstructionist contends that "the final right steer with sufficient rate and magnitude was far in excess of what you needed to maintain the travel lane." *Id.* 155:4-6. He

8

NOT FOR PUBLICATION

further asserts that "Mr. Rahman's steering inputs in reaction to the left rear tire event were improper. . . . This vehicle was placed into a final clockwise yaw while traveling at relatively high speeds as a result of the final excessive right steering input by Mr. Rahman, and likely by a multiple steer input event by the driver prior to the final clockwise yaw or rotation." Hoover Report 15. A jury in this case would decide what a reasonable person would have done in this emergency situation, and then compare Rahman's actions to the standard of care. Because Mr. Hoover's testimony would help the jury make this comparison, and to decide whether Rahman's actions were a proximate cause of the accident, Fed R. Evid. 401 does not bar the testimony's admission.

### III.   Evidence of Rahman's Marijuana Use Is Unduly Prejudicial

Defendant plans to offer evidence of Rahman's marijuana use to demonstrate his negligent driving. Plaintiff objects to this evidence as unduly prejudicial. When deciding whether to exclude evidence of intoxication on these grounds, a federal court sitting in diversity applies the law of the relevant state. *See Rovegno v. Geppert Bros., Inc.,* 677 F.2d 327, 329 (3d Cir. 1982); *see also Hulmes,* 936 F. Supp. at 201 (noting no difference between Fed. R. Evid. 403 and N.J.R. Evid. 403 in balancing the probative value of evidence of alcohol consumption against its potential prejudicial effect). Here the relevant state is New Jersey. *See* Court's Op., ECF No. 71. In New Jersey, "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R. Evid. 403.

The leading New Jersey case on the applicability of Rule 403 to evidence of intoxication is *Gustavson v. Gaynor*, 206 N.J. Super. 540 (App. Div. 1985), *certif. denied,* 103 N.J. 476 (1986). In that case, the defendant admitted having two or three bottles of beer five to six hours

NOT FOR PUBLICATION

before the accident, but there was no blood test available and no eyewitness testimony

corroborating the defendant's intoxication. 206 N.J. Super. at 545. The Appellate Division held:

> The mere fact that a driver had consumed some alcoholic beverages is by itself
> insufficient to warrant an inference that the driver was intoxicated and that the
> intoxication was of such a degree as to render him unfit to drive at the time of the
> accident. The admission of such testimony without supporting evidence is unduly
> prejudicial in view of its capacity to inflame the jury.

*Id.* The court concluded that evidence of consumption of alcoholic beverages was inadmissible

unless there was "supplementary evidence from which the trier of fact may reasonably conclude

that the drinking affected the safe operation of the vehicle." *Id.* at 544-45. "The required

supportive evidence includes conduct such as excessive drinking, driving at an excessive speed,

recklessness or erratic driving, drunken behavior at the accident scene, or similar acts suggestive

of an unfitness to drive." *Id.* at 545.

Several courts have noted that the list of possible sources of "supplementary evidence" in

*Gustavson* is not exhaustive. In *Guzzi v. Clarke,* 252 N.J. Super. 361 (N.J. L. Div. 1991), the

Law Division admitted evidence of the consumption of alcohol and prescription drugs absent any

evidence of "drunken behavior." *Id.* at 366. The *Guzzi* court also admitted an expert's analysis of

the effects of drugs and alcohol on driving ability to demonstrate the defendant's negligence. *Id.*

at 364. Citing *Guzzi,* one court in this district concluded that ".10 percent BAC, when considered

with independent evidence that alcohol had been consumed, could constitute supplementary

evidence of unfitness to drive, at least as competent as 'traditional' eyewitness testimony of

'drunken behavior.'" *Hulmes v. Honda Motor Co.*, 960 F. Supp. 844, 854 (D.N.J. 1997), *aff'd,*

141 F.3d 1154 (3d Cir. 1998); *see also Lopez v. Borough of Sayreville*, No. A-0158-06T5, 2008

WL 2663423, *21 (N.J. App. Div. July 9, 2008) (finding sufficient supplementary evidence in

plaintiff's testimony confirming his consumption of alcohol, expert testimony as to the plaintiff's

NOT FOR PUBLICATION

BAC and the impairment that would result, and testimony from both the plaintiff and a witness indicating that the plaintiff drove in a hazardous manner).

As supplementary evidence of Rahman's intoxication, Defendant offers a laboratory test of Rahman's urine taken three hours after the crash showing high levels of a marijuana-related metabolite. The data is accompanied by the analysis of Drs. Wimbish and DuPont. In addition, one passenger testified that Rahman was driving below the speed limit. Zafar Malik Dep. 40:15-17, Ex. M to Bradley Cert. ("I know we were going under 55 miles an hour because I was making fun of Abdul [Rahman] for driving slow."). Dr. Wimbish, accepting this testimony as true, stated that slow driving is consistent with marijuana impairment. *See* Wimbish Dep. 50:5-15. In contrast, Todd Hoover concluded that the vehicle was traveling at or slightly above the speed limit. Hoover Report 14.

The probative value of this supplementary evidence is weak. Because of the significant amount of time between the marijuana use and the accident, the lack of information about the quantity consumed, the difficulty of measuring marijuana impairment, and the absence of any observation of Rahman's reflexes or cognition immediately before or after the accident, Drs. Wimbish and DuPont cannot estimate with a high degree of scientific certainty what impact Rahman's marijuana smoking had on his driving. Dr. Wimbish testified that "there are no quantifiable levels" of impairment after marijuana use. Wimbish Dep. 30:8-9. Despite concluding that "[a]nyone with that large amount [of carboxy metabolite] in their urine would be a chronic user of marijuana and would be severely intoxicated from the residual quantity of THC in their body," *id.* 39:25-40:3, when asked for the scientific basis of his assumption, Dr. Wimbish acknowledged that this "particular question is not addressed in any of the scientific literature concerning intoxication with marijuana." *Id.* 36:11-22. Dr. DuPont's report corroborates this gap

11

NOT FOR PUBLICATION

in the literature: unlike with alcohol, "[t]here is no blood or urine impairment threshold for marijuana because consistent relationships between drug blood concentrations and impairment do not exist." DuPont Report 4 (citing articles).

It is uncontested that the accident occurred outside the time period when the drug would have had its greatest influence; Dr. DuPont acknowledges that most of the effects of the drug wear off within three to five hours. DuPont Dep. 65:11-15. According to studies cited by Dr. Wimbish, smoking marijuana can create impairment of "coordination, tracking, perception, vigilance and performance in complex motor skills" for twenty-four hours. Wimbish Report 2-3 (citations omitted). According to Rahman's testimony, the accident would have been near the end of this twenty-four hour period. Def.'s SMF ¶ 4. The vague possibility of driving impairment suggested by the cited studies does little to help a jury evaluate Mr. Hoover's theory that Rahman caused the crash by turning the wheel improperly. That the vehicle may have been traveling slightly below the speed limit is also too attenuated from Rahman's marijuana use to constitute supplemental evidence of intoxication, especially when Defendant's own accident reconstructionist contradicts the testimony, Hoover Report 14, and the observation is unaccompanied by any other sign of impaired driving. *See State v. Ibraham*, No. A-4546-13T2, 2015 WL 2212347 (N.J. App. Div. May 13, 2015) (excluding toxicologist's testimony about the intoxicating effects of a chemical's concentration in the blood under Rule 403 when scientific evidence was so "sparse" that the jury would be required to "draw inference upon inference.")

Following *Gustavson*, the mere fact that a driver consumed some marijuana almost twenty-four hours before the crash is by itself insufficient to warrant an inference that the driver was intoxicated and that the intoxication was of such a degree as to render him unfit to drive at the time of the accident. As *Gustavson* recognized, a jury is likely to be inflamed by evidence of

12

NOT FOR PUBLICATION

use of intoxicating substances. Given the scientific and factual uncertainty here, the potential for

undue prejudice and distraction from evidence of Rahman's marijuana use substantially

outweighs its probative value. The evidence is inadmissible under N.J.R. Evid. 403.

## CONCLUSION

Plaintiff's motion is granted in part and denied in part. Defendant is barred from

introducing evidence of Abdul Rahman's marijuana use, but may seek to apportion liability to

Rahman, and may introduce evidence to demonstrate that his driving errors contributed to the

crash.

DATE: 26 May 2015

_____
Hon. William H. Walls
United States Senior District Judge